**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GUIPPONE, on behalf of himself and all others similarly situated,　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　Plaintiff,　　)<br>　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　v.　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　)<br>BH S&B HOLDINGS LLC, BHY S&B　　　　)<br>INTERMEDIATE HOLDCO LLC, BAY　　　　)<br>HARBOUR MANAGEMENT LC, and YORK　)<br>CAPITAL MANAGEMENT,　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　Defendants.　)<br> | Case No. 09 Civ. 01029 (CM) |

## PLAINTIFFS' OPPOSITION TO MEMORANDUM OF LAW OF DEFENDANTS BH S&B HOLDINGS LLC AND BHY S&B INTERMEDIATE HOLDCO LLC'S MOTION TO DISMISS THE COMPLAINT

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

Jack A. Raisner (JR 6171)
René S. Roupinian (RR 3884)

## TABLE OF CONTENTS

**Page**

**PROCEDURAL HISTORY**………………………………………………………………..2

**OVERVIEW OF THE WARN ACT**...……………………………………………………3

**ARGUMENT**…………………………………………………………………………..5

**I.** **PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED** …………………………………………………………5

**II.** **PLAINTIFFS ARE ENTITLED TO PROTECTION UNDER THE WARN ACT BECAUSE THEY WERE EMPLOYEES OF THE BUSINESS** ……………………..6

**CONCLUSION**………………………………………………………………………15

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)..................................................................................... passim

*Chernish v. Mass. Mut. Life Ins. Co.*,
    2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. February 10, 2009).....................................5

*Chylinski v. Bank of Am., N.A.*,
    2009 U.S. Dist. LEXIS 32133 (D. Conn. April 15, 2009)........................................5

*Headrick v. Rockwell International Corp.*,
    24 F.3d 1272 (10th Cir. 1994) ..................................................................10, 11

*International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.*,
    50 F.3d 1464 (9th Cir.), *cert. denied*, 516 U.S. 987 (1995)....................................11

*International Oil, Chemical and Atomic Workers v. Uno-Ven Co.*,
    170 F.3d 779 (7th Cir. 1999) ...................................................................11

*Iqbal v. Hasty*,
    490 F.3d 143 (2d Cir.2007).........................................................................5

*Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.*,
    898 F. Supp. 451 (S.D. Tex. 1995) ........................................................10, 12

*Pearson v. Component Technology Corp.*,
    247 F.3d 471 (3rd Cir. 2001) ......................................................................4

*Roeder v. United Steelworkers of American (In re Old Electralloy Corp.)*,
    162 B.R. 121 (Bankr. W.D. Pa. 1993) ..........................................................7, 8

*Smullin v. Mity Enters*,
    420 F.3d 836 (8th Cir. Ark. 2005) ...............................................................13

*Wilson v. Airtherm Prods., Inc.*,
    436 F.3d 906 (8th Cir. Ark. 2006) ....................................................10, 11, 13

*Wiltz v. M/G Transport Services, Inc.*,
    128 F.3d 957 (6th Cir. 1997) ....................................................................11

## FEDERAL STATUTES

29 U.S.C. § 2101(a)(1)...................................................................................3, 4, 7

29 U.S.C. § 2101(a)(2)........................................................................................9

29 U.S.C. § 2101(a)(3)......................................................................................7, 9

29 U.S.C. § 2101(a)(6)......................................................................................7, 9

29 U.S.C. § 2101(a)(8)........................................................................................7

29 U.S.C. § 2101(b)(1) ...............................................................................9, 10, 11

29 U.S.C. § 2102(a)(1)........................................................................................3

29 U.S.C. § 2104(a)(1)........................................................................................4

## RULES AND REGULATIONS

20 C.F.R. § 639.1...............................................................................................3

20 C.F.R. §639.3(a)............................................................................................4

20 C.F.R. § 639.3(a)(2).......................................................................................5

20 C.F.R. § 639.6.............................................................................................10

20 C.F.R. § 639.7...............................................................................................4

Rule 8 ...............................................................................................................5

Rule 12(b)(6).....................................................................................................5

Rule 41(a)(1)(A)(i).............................................................................................2

Plaintiff Michael Guippone (on behalf of himself and as putative representative of a class of similarly situated claimants ["Plaintiffs"]), by and through his undersigned counsel, opposes the Motion to Dismiss the Debtor Defendants (the "Motion") filed by BH S&B Holdings LLC ("BHSB") and BHY S&B Intermediate Holdco LLC (collectively, the "Debtor Defendants"). The putative class members were employees of the Steve & Barry's company, a chain of discount fashion clothing stores; many were long-term employees and worked at the corporate headquarters. They stayed with the company through its financial travails, including two bankruptcy sales, and were encouraged to stay and keep working by Bay Harbour Management LC ("Bay Habour") and YSOF S&B Investor, LLC ("York Capital") (collectively, the "Non-Debtor Defendants"), who bought the company out of bankruptcy in August 2008 and promised them better days ahead. In November 2008, the Defendants terminated them without advance written warning as required by the WARN Act. The Motion to Dismiss is based on a single argument: that Plaintiffs were "part-time" employees because they had not been employed by the Non-Debtor Defendants for at least six months at the time they were terminated, and thus were not owed notice under the Worker Adjustment and Retraining Notification Act, 29 USC §§ 2101 *et seq.*, (the "WARN Act").

The Debtor Defendants are wrong. It is irrelevant for WARN purposes that the Debtor Defendants purchased S&B Industries, Inc. ("Steve & Barry's") only three months prior to laying off the putative class. It is clear from the language of the WARN Act, its case law and regulations, as well as from the "asset purchase agreement," that the Debtor Defendants were required to give the Plaintiffs advance written notice of the layoff because they purchased Steve & Barry's business as a going concern. The putative class members were employees of the Steve & Barry's "business enterprise," and although the employer's ownership changed in the

bankruptcy sale, the employees' status did not. As full-time employees, their employment continued uninterrupted by the August 2008 sale; thus they were entitled to WARN notice 60 days before being laid off in November 2008.

## **PROCEDURAL HISTORY**

On November 18, 2008, Plaintiffs commenced a civil action (the "Civil Action") in the United States District Court for the Southern District of New York (the "District Court") against the Defendants. The case was titled *Guippone, et al. v. BH S&B Holdings LLC, et al.*, 08-cv-10007-CM.[1] The complaint alleged that Plaintiffs and similarly situated terminated employees were terminated on or around November 17, 2008, in violation of the WARN Act.

On November 19, 2008, Defendant BH S&B Holdings LLC, filed a Chapter 11 bankruptcy petition, as did a related entity, BHY S&B Intermediate HoldCo LLC. The two bankruptcy cases are being jointly administered in U.S. Bankruptcy Court, Southern District of New York (Bankr. Case No. 08-14604 (MG)).

Given the automatic stay that went into effect on November 19, 2008 as a result of the bankruptcy filings, and the likelihood that the adversary proceeding action would be litigated in the Bankruptcy Court, Plaintiffs filed a voluntary notice of dismissal of the District Court Civil Action without prejudice under Rule 41(a)(1)(A)(i) on November 24, 2008.

On November 20, 2008, Plaintiffs essentially re-filed the case as an Adversary Proceeding in the Bankruptcy Court. (Adv. Proc. No. 08-01747 (MG)). The pleading was substantially the same as the original complaint, except that it added as a debtor defendant BHY S&B Intermediate HoldCo LLC.

---

[1] Copies of the District Court Complaint and the Adversary Proceeding Complaint are attached hereto as Exhibits A and B, respectively.

Upon agreement with Defendants that the interests of efficiency and avoidance of inconsistent adjudications would be best served by litigating the case in District Court, on January 20, 2009, Plaintiffs asked this Court to reinstate the case (Dist. Case No. 08-10007, Docket No. 4) and consented to the Defendants' Motion to Withdraw the Reference (Dist. Case No. 09-01029, Docket No. 1). That request was granted on February 19, 2009, when this Court accepted the reinstatement of the District Court action. On April 15, 2009, this Court granted the Motion to Withdraw the Reference (Dist. Case No. 09-01029, Docket No. 5).

On April 24, 2009, the Debtors and Non-Debtor Defendants each filed a Motion to Dismiss (Dist. Case No. 09-01029, Docket Nos. 7, 8, 9, 10).

## OVERVIEW OF THE WARN ACT

The WARN Act provides protection to employees by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and to seek retraining that will allow workers to successfully compete in the job market. WARN also provides for notice to dislocated worker units in each State so that dislocated worker assistance can be promptly provided. 20 C.F.R. § 639.1.

To accomplish its goals, the WARN Act bars employers with 100 or more employees from ordering a "plant closing" or a "mass lay-off," each as defined in the Act, unless at least sixty-days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure. 29 U.S.C. § 2101(a)(1), § 2102(a)(1).

The notice must contain:

(1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

(3) An indication whether or not bumping rights exist; and

(4) The name and telephone number of a company official to contact for further information.

20 C.F.R. § 639.7.

Failure to give the required notice renders the employer liable to each affected employee for 60 days pay and benefits. If the employer gives its employees less than 60 days notice, the employer is liable for pay and benefits for the number of days notice was wrongfully not given. 29 U.S.C. § 2104(a)(1).

Two nominally separate entities may be considered a "single employer" and be held jointly and severally liable for the failure of the employees to receive proper WARN Act notice. 29 U.S.C. §2101(a)(1) and 20 C.F.R. §639.3(a). Courts that have considered whether two entities are to be considered a single employer have sometimes used "integrated enterprise" test, a four-part analysis of the interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3rd Cir. 2001).  However, the Department of Labor ("DOL"), which is responsible for issuing regulations and guidance on the WARN Act, has specifically promulgated a set of five factors to be considered when deciding whether to hold a parent company liable for the WARN Act violations of its subsidiary. The DOL regulations incorporate the integrated enterprise analysis but enumerate five relevant factors for courts to use when

considering whether to impose WARN Act liability on a parent corporation and its subsidiaries as a "single employer." The regulation provides that:

> Under existing legal rules ..., subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent of contracting company depending upon their degree of independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2).

## ARGUMENT

## I.   PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Although the Supreme Court has recently addressed the pleading standard in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Twombly* left intact the mandate that Rule 12(b)(6) must be read in conjunction with Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement showing that the pleader is entitled to relief" and contains a powerful presumption against rejecting pleadings for failure to state a claim. *Chernish v. Mass. Mut. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. February 10, 2009).  As the Second Circuit has recently stated, *Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *See Iqbal v. Hasty*, 490 F.3d 143, 154 (2d Cir.2007).

Importantly, "the *Twombly* decision repeatedly indicated that the Court was not adopting or applying a "heightened pleading standard." *See Iqbal v. Hasty*, 490 F.3d at 157-258. *See also Chylinski v. Bank of Am., N.A.*, 2009 U.S. Dist. LEXIS 32133 at *3 (D. Conn. April 15, 2009),

*citing Twombly*, 550 U.S. at 569 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") .

The Debtor Defendants do not discuss the relevant standard set forth in *Twombly*, but ask this Court to draw a legal conclusion that "the WARN Act simply does not apply in this case" because "it is undisputed, even viewing the facts in the light most favorable to Plaintiffs that the Named Plaintiff (and each of the members of the putative class) were employed by BHSB for fewer than 90 days." (*See* Motion, pg. 3). This is an unfounded request, given the case law, regulations and purpose of the WARN Act. The Debtor Defendants have failed to find a single source of authority that supports their contention that they were immune from WARN liability when they terminated the Plaintiffs. The cases they cite uniformly support Plaintiffs' claims, but also indicate that the legal conclusion they seek may rest on facts which may or may not be disputed at this stage of the litigation. The Debtor Defendants' motion is therefore both meritless and premature, and must be rejected.

## II.    PLAINTIFFS ARE ENTITLED TO PROTECTION UNDER THE WARN ACT BECAUSE THEY WERE EMPLOYEES OF THE BUSINESS.

The Debtor Defendants purchased Steve & Barry's in an August 2008 asset sale. The Debtor Defendants ask this Court to find that in the six-month period following the purchase, they could side-step the WARN Act and lay off without notice the long-term employees who had continued working through the sale. The Debtor Defendants derive this blanket privilege from WARN's definition of "part-time employee." No court or any source of authority has ever done so. The part-time employee test is used for taking head counts when determining whether layoffs and shutdowns meet WARN's minimum thresholds. The rule is that while part-time employees are entitled to damages when they are dismissed in a WARN event, they are not counted towards the minimum 50+ employee thresholds for mass layoffs or plant closings.

Part-time employees are those "who ha[ve] been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8). It is true that the definition would preclude WARN claims in a mass layoff or shutdown in which only newly-hired employees of less-than-six-months' tenure were terminated. It has never been used to absolve liability, however, when a newly arrived *owner* of less-than-six-months' tenure takes over an ongoing workforce. The law is so clear that Non-Debtor Defendants' efforts to distort it can only be disingenuous.

The Debtor Defendants argue that the putative class members it terminated were all part-time employees because they were let go less than six months after the purchase. (*See* Motion, pgs. 1, 8). The Debtor Defendants ignore the fact that the part-time definition does not exclude from the six-months tally the time employees spend working for the employing business under a previous ownership. The WARN Act defines an employer as "any business enterprise" that employs 100 or more employees excluding part-time employees; or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime). 29 U.S.C. § 2101(a)(1). Implicit in this definition is the idea that workers are considered employees of the business operation for the full length of their tenure, despite changes in ownership, directors, stockholders or management.

The Debtor Defendants ignore the fact that after 20 years of WARN litigation, and many sale-of-business cases, no authority exists that supports their notion that when a business is sold, the incumbent employees suddenly are deemed "part-time" and remain so, bare of WARN protection, for the subsequent six months. The Debtor Defendants are disingenuous because they attempt to create this non-existent rule by mischaracterizing the cases they do cite. For example, they correctly state that in *Roeder v. United Steelworkers of American (In re Old*

7

*Electralloy Corp.*), 162 B.R. 121 (Bankr. W.D. Pa. 1993), the purchaser had acquired the company only two months before terminating the employees. They then elliptically state that the Court found the minimum 50-full-time employee threshold had not been met due to application of the part-time employee definition. Despite the implication Non-Debtor Defendants wish to create, however, the Court did not find them to be part-time employees because the buyer only had been around for two months when it ordered the layoff. To the contrary, in *Old Electralloy Corp.*, all the parties and the Court understood that when calculating whether the employees had worked more than six months prior to the termination, they must include the time each employee spent working for the seller and buyer cumulatively, not just the buyer alone. The Court in *Old Electralloy Corp.*, tallied the time employees worked on both the buyer's and seller's payrolls. Most of the terminated employees were not considered part-time because they had worked more than six months for the seller and buyer combined. The starting date for these employees was when they started working for the seller, not for the buyer at the date of sale. Applying this universally-accepted standard to the case at bar, the Debtor Defendants' motion must fail. They have not disputed that the Plaintiff and putative class members were employed by Steve & Barry's, on either buyer's or seller's payroll, for more than six of the past 12 months. Debtor Defendants' effort to force a contrary, baseless result is unavailing.

In the absence of authority for their position, that employees descend to "part-time" status after their employer is sold, Debtor Defendants look generally at how WARN assigns obligations among employers in the "sale of business" context. They make two policy arguments as to why the putative class members should be considered "new" (and, therefore, part-time) employees. First, they argue that in an asset purchase, unlike a full merger, there is

8

no successor liability for employee WARN obligations. Next they argue that their specific agreement with the seller repudiated any successor liability for WARN obligations and intentionally created a "new" employment relationship. While there is an abundance of "sale of business" caselaw clarifying WARN's assignment of employer obligations, the holdings of all undermine Non-Debtor Defendants' two arguments.

The typical issue, in the sale of business context, is whether the employees suffered a termination at the point of sale which required advance written notice by the buyer or seller. The WARN Act settles the question in favor of a finding of "no termination" in most cases. The Act was amended to specifically exclude from the definition of an employment loss (which is necessary to trigger WARN notice) interruptions in employment that occur in sales when the employees leave the seller's payroll and join the buyer's. Such employees are owed no WARN notice:

(b) Exclusions from definition of employment loss:

(1) In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff . . . up to and including the effective date of the sale. After the effective date of the sale . . . the purchaser shall be responsible for providing notice for any plant closing or mass layoff . . . . Notwithstanding any other provision of this chapter, any person who is a [full-time] employee of the seller . . . as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

29 U.S.C. § 2101 (a)(2), (a)(3), (a)(6), (b)(1).

Accordingly, WARN contemplates that employees who go from the buyer to the seller's payroll in a sale of "part or all" of the business are not considered to have been terminated at all. They have suffered no break of employment or employment loss.[2] Such continuity of

---

[2] The DOL commentary sheds light on the sale of business exclusion by referring to Congress' intent: "th[e] sale-of-business exclusion stresses that the WARN Act does not automatically require a seller of a business to give notice to its employees that their employment will be terminated as a result of the sale. The Regulations explain that

employment, for WARN purposes, certainly occurs when total ownership of the business is

purchased. According to one court:

> [t]he plain language of the phrase ['sale of part or all of an employer's business'] would
> clearly encompass a situation where the total ownership of a business changes hands (*i.e.*,
> a merger, sale, or takeover of the control of company). In such a situation, the new
> ownership would, of course, automatically succeed to the obligations of the prior
> ownership, including employment contracts and agreements.

*Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.,* 898 F. Supp. 451,

456 (S.D. Tex. 1995).

The same continuity of employment and transfer of obligations occurs when only a part

of the business is sold, such as its assets only.  "The statute also applies to the sale of "part . . . of

an employer's business." *Id. citing Headrick v. Rockwell International Corp.*, 24 F.3d 1272 (10th

Cir. 1994),[3]  Thus, in the sale of a business, the employees will not be deemed to have suffered

an employment loss by the technical separation of employment from their previous employer.

Simply stated, the rule is that no break in employment occurs for WARN purposes if the

business or its parts, are sold as an operating or "going concern" that is, when employees are

transferred and their employment continues uninterrupted. *Wilson v. Airtherm Prods., Inc.*, 436

F.3d 906, 910 (8th Cir. Ark. 2006).  By contrast, a business is not sold as a "going concern"

when it shuts down, sells its assets, and the buyer does not hire the former employees. *See Oil,*

*Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.,* 898 F. Supp. 451 (S.D.

Tex. 1995).

---

"although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes
effective, WARN notice is only required where the employees, in fact, experience a covered employment loss." 20
C.F.R. § 639.6.
    [3] In *Headrick v. Rockwell International Corp.*, 24 F.3d 1272, the Tenth Circuit held that an agreed transfer
of responsibilities at the government's Rocky Flats project, from its then plant managing contractor of 14 years,
Rockwell International, to a new contractor, was a "sale" within the meaning of WARN, and was not a
"termination" of employees under the Act. The agreement transferred all responsibilities for operations at that
facility, and the transferee assumed the transferor's liabilities relating to the plant's operation "with the expectation
that it would operate the facility with Rockwell's [transferor's] former employees." *Id.* at 1274. It was thus a sale of
"part" of an employer's business within the meaning of § 2101(b)(1).

10

In *Wilson v. Airtherm Prods., Inc.*, employees seeking WARN damages made arguments similar to those of the Non-Debtor Defendants, *i.e.,* that the asset sale constituted a termination of employment (which required notice by the seller).  Rejecting this argument, as have all other Circuits in this context, the Eighth Circuit stated: "[e]ven though a seller of a business technically terminates the employment of its employees--it would be difficult to imagine a sale of a business as a going concern where the seller does not terminate the employment of its employees--the WARN Act does not focus on technical terminations." *Wilson*, 436 F.3d at 909. Accordingly, "[a]s long as the seller's employees are employed by the seller on the effective date of the sale, those employees automatically are considered to be employees of the buyer 'immediately after the effective date of the sale" for purposes of the WARN Act. 29 U.S.C. § 2101(b)(1). *Id.* at 910.  *See also, In Headrick v. Rockwell International Corp.*, 24 F.3d 1272, 1280 (10th Cir. 1994)(Court found no employment loss although employees had been technically terminated because they were in fact rehired by the buyer of the business just a "millisecond" after their termination and Congress meant "employment loss" to cover only employees truly idled or deprived of income); *International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.*, 50 F.3d 1464 (9th Cir.), *cert. denied*, 516 U.S. 987 (1995)(although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss); *Wiltz v. M/G Transport Services, Inc.*, 128 F.3d 957 (6th Cir. 1997) (following *Headrick v. Rockwell International Corp.*; *International Oil, Chemical and Atomic Workers v. Uno-Ven Co.*, 170 F.3d 779 (7th Cir. 1999) (WARN Act excludes from definition of "employment loss" situation where sale of business results only in technical termination of employment).

11

The lone WARN case that Debtor Defendants cite in support of their position that an asset purchase creates non-continuous employment is entirely consistent with the above analysis. In *Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equipment Fin., Inc.,* the Court found an asset sale constituted a full termination of employment because the employees did not pass to the buyer. The seller's business, a refinery, was foreclosed in bankruptcy. Shortly thereafter, the liquidating trustee terminated all 140 or so employees and shutdown the facility. The assets were purchased, but the buyer did not hire any of the terminated ex-employees. The ex-employees sued the buyer under WARN, even though the buyer never "exercised any employer functions with regard to Plaintiffs, such as hiring, firing, supervising, or paying them." 898 F. Supp. at 453. Granting summary judgment to the employer, the Court held that the buyer had not assumed WARN responsibilities because this was a pure asset sale where there was no transfer of any employees.

Here, by stark contrast, there is no dispute that this was a sale of business with a transfer of employees. It is indisputable that the Debtor Defendants exercised a full range of employer functions over the putative class members, including their hire, supervision, pay and termination. The instant case is indistinguishable from the universe of cases that uniformly hold that a sale of business does not interrupt employment for WARN purposes. It is understandable, then, why courts applying the definition of a part-time employee consider the employee's tenure with the seller and the buyer as one towards the six-month measure. Given WARN's emphatic mandate that courts *not* deem the sale of a business in which employees transfer a termination/renewal of their employment, Debtor Defendants' attempt to have this Court deem the putative class' employment both terminated and renewed with part-time status is specious. If WARN actually conferred on business buyers a six-month window in which to order mass layoffs and shutdowns

12

free of WARN obligations, that license would be one of the most salient considerations in the law of corporate acquisitions. That it is nowhere mentioned indicates that the license does not exist and this motion is an exercise in wishful thinking.

The Debtor Defendant's second argument is that they can draft their way around WARN's presumption that employment is not interrupted by the sale of the business. They point to the terms of the Asset Purchase Agreement wherein the assets of Steve & Barry's were purchased in August 2008 (*See* Motion to Dismiss, pg.7). The Debtor Defendants argue that they specifically contemplated a clean rehire of the members of the putative class without any successor liability. Such attempted circumventions of WARN obligations have been specifically rejected. In *Wilson v. Airtherm Prods., Inc.* 436 F.3d at 912, the asset purchase and termination of all the employees took place on the same day, a Friday. After the sale was concluded, the buyer first began taking applications for employment on Monday. While the buyer expressed hope that all of the sellers' employees would "make application for employment," jobs were not assured. The district court found the seller had terminated the employees without notice and, on summary judgment, awarded them more than $500,000 in WARN damages. On appeal, the Eighth Circuit reversed. The panel noted that "[t]o be certain, the record paints a picture that API and ALLC may have attempted to structure the sale of API in such a way as to avoid any successor labor responsibilities for ALLC." *Id.* at 912, n.4. The Court nevertheless brushed aside such factors when considering whether a WARN event occurred at the point of sale. Vacating the award and ordering summary judgment in favor of the seller, the Court agreed with the weight of authority that the WARN sale-of-business exclusion mandates a finding of continuous, uninterrupted employment in "any transaction that transfers all or part of the employer's overall operations as a going concern. *Id.* at 910, *citing Smullin v. Mity Enters.,* 420 F.3d 836, 839 (8th Cir. Ark. 2005).

13

Despite the fact that the employees technically had been terminated and rehired, the Eighth Circuit found they had not been terminated for WARN purposes because the business had been sold as a "going concern."

Here, Debtor Defendants cite to terms of the Asset Purchase plan, particularly the self-serving statements absolving themselves of WARN liability. (Motion pg. 7 n. 5). In fact, the Asset Purchase plan plainly reveals the parties' intent that Steve & Barry's be sold as a "going concern." The first page of the Asset Purchase Agreement states that the "Purchaser desires to purchase substantially all the assets ... of the Seller *with the present intention of operating the Business as a going concern*." (*See* Copy of Asset Purchase Agreement, annexed as Exhibit 5 to Non-Debtors' Motion to Dismiss, pg. 1) (*emphasis added*). Additionally, the Employee and Employee Benefits section of the Asset Purchase Agreement reflects the notion that the parties understood the employees to be part of the business operation as a whole, as Section 9.1(a) refers to the "Business Employees," with the term "Business" defined as the "business of the sellers."(*See* Exhibit 5 to Non-Debtors' Motion to Dismiss, pgs. 3, 41). In other words, the employees are in the first instance not employees of the seller or buyer, but of the "Business." Indeed, the plan refers to members of the putative class as "Transferred Employees." *See* Section 9.2 "Employee Benefits" (Exhibit 5 to Non-Debtors' Motion to Dismiss, pgs. 41-42). Importantly, the buyer and seller here expressly agreed to "cooperate" to make sure the Plaintiffs' employment would be unbroken, *i.e.*, to "ensure the continuity of the workforce of the Business." Section 9.1(d) "Cooperation and Communication"(Exhibit 5 to Non-Debtors' Motion to Dismiss, pg. 41). The parties' statement of agreement to "ensure [] continuity" of their employees demonstrates their intent that employees be transferred as part of the sale. The allegations and supporting facts in this case are squarely in line with *all* of the cases described above that find no discontinuation in

14

employment when a sale of this type occurs. The conclusion compelled by the facts and law is that, for the purposes of the WARN Act, the putative class was not terminated upon the sale of Steve & Barry's and did not begin a new employment as part-time employees of the Debtors unprotected by the WARN Act..

## CONCLUSION

For all the reasons stated above, Plaintiffs were entitled to WARN notice by the Defendants and the Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

New York, New York

<div style="margin-left: 40%;">

/s/ René S. Roupinian
René S. Roupinian (RR 3884)
Jack A. Raisner (JR 6171)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Email: rroupinian@outtengolden.com
Email: jar@outtengolden.com

Attorneys for Plaintiff and the putative Class

</div>

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GUIPPONE, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | )    Case No. 09 Civ. 01029 (CM) |
| BH S&B HOLDINGS LLC, BHY S&B INTERMEDIATE HOLDCO LLC, BAY HARBOUR MANAGEMENT LC, and YORK CAPITAL MANAGEMENT, | ) ) ) ) ) |
| Defendants. | ) ) |

## CERTIFICATE OF SERVICE

Kim Xhaferi, declares under penalty of perjury that: I am not a party to this action, am over 18 years of age and am employed by Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, NY 10016. I hereby certify that true and correct copies of the foregoing were served on May 22, 2009 via first class mail upon the following:

Richard I. Greenberg (RG 4911)
JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
*Special Counsel for the Debtors*

Richard Stieglitz, Jr.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
*Attorneys for the Debtors*

Israel Dahan (ID 6148)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281

*Attorneys for Bay Harbour Management LC*

Richard Swanson (RS 6068)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
*Attorneys for York Capital*

KIM XHAFERI