**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL GUIPPONE, on behalf of himself
and all others similarly situated,

                Plaintiff,

      v.

BH S&B HOLDINGS LLC, BHY S&B
INTERMEDIATE HOLDCO LLC, BAY
HARBOUR MANAGEMENT LC, and YORK
CAPITAL MANAGEMENT,

                Defendants.

---

Case No. 09 Civ. 01029 (CM)

## PLAINTIFFS' OPPOSITION TO MEMORANDUM OF LAW OF NON-DEBTOR DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

Jack A. Raisner (JR 6171)
René S. Roupinian (RR 3884)

## TABLE OF CONTENTS

Page

PROCEDURAL HISTORY.................................................................................3

OVERVIEW OF THE WARN ACT...................................................................4

ARGUMENT...................................................................................................6

I.  PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF
    MAY BE GRANTED ...............................................................................6

II.  PLAINTIFFS ARE ENTITLED TO PROTECTION UNDER THE WARN ACT
     BECAUSE THEY WERE EMPLOYEES OF THE BUSINESS .......................8

III.  THE DEFENDANTS CONSTITUTE A "SINGLE EMPLOYER" UNDER
      THE WARN ACT..................................................................................17

CONCLUSION...............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Administaff Cos. v. UNITE,*
    337 F.3d 454 (5th Cir. 2003) ......................................................................................19

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007)............................................................................................ passim

*Chernish v. Mass. Mut. Life Ins. Co.,*
    2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. February 10, 2009)......................................6

*Childress v. Darby Lumber, Inc.,*
    357 F.3d 1000 (9th Cir. 2004) ...................................................................................19

*Chylinski v. Bank of Am., N.A.,*
    2009 U.S. Dist. LEXIS 32133 (D. Conn. April 15, 2009)...........................................6

*Coppola v. Bear Stearns & Co.,*
    2005 U.S. Dist. LEXIS 45551 ...................................................................................17

*Ferrell v. Harvard Ind., Inc.,*
    2001 U.S. Dist. LEXIS 17358 (E.D. Pa. 2001) ........................................................18

*Franklin v. General Trucking, LLC,*
    2008 U.S. Dist. LEXIS 38431 (W.D. Ark. 2008)......................................................18

*Geelan v. Mark Travel, Inc.,*
    2006 U.S. Dist. LEXIS 89863 (D.Minn. 2006) .........................................................18

*Headrick v. Rockwell International Corp.,*
    24 F.3d 1272 (10th Cir. 1994) .............................................................................12, 13

*International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.,*
    50 F.3d 1464 (9th Cir.), *cert. denied*, 516 U.S. 987 (1995).....................................13

*International Oil, Chemical and Atomic Workers v. Uno-Ven Co.,*
    170 F.3d 779 (7th Cir. 1999) .....................................................................................13

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir.2007).........................................................................................6

*Local 2-1971 of PACE Intl Union v. Cooper,*
    364 F. Supp. 2d 546 (W.D.N.C. 2005) .....................................................................17

*Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.,*
    898 F. Supp. 451 (S.D. Tex. 1995) ...................................................................12, 13

*Pearson v. Component Technology Corp.*
    247 F.3d 471 (3rd Cir. 2001) .................................................................... passim

*Roeder v. United Steelworkers of American*
    *(In re Old Electralloy Corp.)*, 162 B.R. 121 (Bankr. W.D. Pa. 1993)................................9, 10

*Smullin v. Mity Enters,*
    420 F.3d 836 (8th Cir. Ark. 2005) ...........................................................................15

*Vogt v. Greenmarine Holding, LLC*
    318 F. Supp. 2d 136 (S.D.N.Y. 2004)..............................................................17, 18

*Wilson v. Airtherm Prods., Inc.,*
    436 F.3d 906 (8th Cir. Ark. 2006) ...............................................................12, 13, 15

*Wiltz v. M/G Transport Services, Inc.,*
    128 F.3d 957 (6th Cir. 1997) ...................................................................................13

## FEDERAL STATUTES

29 U.S.C. § 2101(a)(1)...........................................................................................4, 5, 9

29 U.S.C. § 2101(a)(2)............................................................................................7, 11

29 U.S.C. § 2101(a)(3)...............................................................................................11

29 U.S.C. § 2101(a)(6)...............................................................................................11

29 U.S.C. § 2101(a)(8)............................................................................................7, 8

29 U.S.C. § 2101(b)(1) ..........................................................................................12, 13

29 U.S.C. § 2102(a)(1)...............................................................................................4

29 U.S.C. § 2104(a)(1)...............................................................................................5

## RULES AND REGULATIONS

20 C.F.R. § 639.1 ......................................................................................................4

20 C.F.R. §639.3(a).....................................................................................................5

20 C.F.R. § 639.3(a)(2)......................................................................................................6, 17

20 C.F.R. § 639.6.....................................................................................................................16

20 C.F.R. § 639.7.......................................................................................................................5

Rule 8 ......................................................................................................................................6, 8

Rule 12(b)(6)...............................................................................................................2, 6, 17, 19

Rule 41(a)(1)(A)(i)......................................................................................................................8

Plaintiff Michael Guippone (on behalf of himself and as putative representative of a class of similarly situated claimants ["Plaintiffs"]), by and through their undersigned counsel, opposes the Motion to Dismiss Non-Debtor Defendants (the "Motion") filed by Bay Harbour Management LC ("Bay Harbour") and YSOF S&B Investor, LLC ("York Capital") (collectively, the "Non-Debtor Defendants"). The putative class members were employees of the Steve & Barry's company, a chain of discount fashion clothing stores; many were long-term employees and worked at the corporate headquarters. They stayed with the company through it financial travails, including two bankruptcy sales, and were encouraged to stay and keep working by the Non-Debtor Defendants who bought the company out of bankruptcy in August 2008 and promised them better days ahead. In November 2008, the Non-Debtor Defendants terminated them without advance written warning as required by the WARN Act. The Motion to Dismiss is based on two main contentions: first, that Plaintiffs were "part-time" employees because they had not been employed by the Non-Debtor Defendants for at least six months at the time they were terminated, and thus were not owed notice under the Worker Adjustment and Retraining Notification Act, 29 USC §§ 2101 *et seq.*, (the "WARN Act"). Second, Non-Debtor Defendants claim that Plaintiffs have failed to plead facts sufficient to hold them liable with the Debtors as a single employer.

The Non-Debtor Defendants are wrong on both counts. First, it is irrelevant for WARN purposes that they, through BH S&B Holdings LLC ("BHSB") and BHY S&B Intermediate Holdco LLC (collectively, the "Debtor Defendants"), purchased S&B Industries, Inc. ("Steve & Barry's") only three months prior to laying off the putative class. It is clear from the language of the WARN Act, its case law and regulations, as well as from the "asset purchase agreement," that the Non-Debtor Defendants were required to give the Plaintiffs advance written notice of the

layoff because they purchased Steve & Barry's business as a going concern. The putative class members were employees of the Steve & Barry's "business enterprise," and although the employer's ownership changed in the bankruptcy sale, the employees' status did not.  As full-time employees, their employment continued uninterrupted by the August 2008 sale; thus they were entitled to WARN notice 60 days before being laid off in November 2008.

The Non-Debtor Defendants' second contention is that they are not liable as a "single employer" for failing to provide WARN notice. Specifically, the Non-Debtor Defendants contend the Complaint is insufficiently factual under Rule 12(b)(6). While "single employer" is a fact-intensive issue whose resolution is premature at this stage of the litigation, Plaintiffs have pleaded sufficient facts to support the Complaint.  Plaintiffs allege that the Non-Debtor Defendants exercised control over the Debtors' operations, including the critical decision to terminate the Plaintiffs and other similarly situated persons (*See* Complaint, ¶¶ 19, 21, annexed hereto as Exhibit A).  These allegations have been further amplified in the bankruptcy proceeding by the filing by the Committee of Unsecured Creditors on behalf of the Debtors themselves – the Steve & Barry's business that Plaintiffs allege Non-Debtor Defendants' controlled. The Debtors and the Committee have set forth detailed factual allegations in a complaint against the Non-Debtor Defendants which, *inter alia,* seeks to pierce the corporate veil.  They allege how the entities were intertwined and the Non-Debtor Defendants dominated and controlled the Debtors, including making all strategic decisions, exercising strict control over the expenditure of funds, acting as the CEO, and deciding to liquidate the Debtors. (*See* Committee Complaint, annexed hereto as Exhibit B.)  While the corporate Debtors are naturally further ahead than the employee Plaintiffs in alleging facts demonstrating such domination, Plaintiffs are clearly not engaged in a fishing expedition and should be permitted discovery on

their less rigorous allegation of "single-employer." At this point, Non-Debtor Defendants cannot claim Plaintiffs' allegations are implausible. They are fully apprised of the claim that they were responsible for operating the Debtors' business and employing the putative class.[1]

## PROCEDURAL HISTORY

On November 18, 2008, Plaintiffs commenced a civil action (the "Civil Action") in the United States District Court for the Southern District of New York (the "District Court") against the Defendants. The case was titled *Guippone, et al. v. BH S&B Holdings LLC, et al.*, 08-cv-10007-CM.[2] The complaint alleged that Plaintiffs and similarly situated terminated employees were terminated on or around November 17, 2008, in violation of the WARN Act.

On November 19, 2008, Defendant BH S&B Holdings LLC, filed Chapter 11 bankruptcy petition, as did a related entity, BHY S&B Intermediate HoldCo LLC. The two bankruptcy cases are being jointly administered in U.S. Bankruptcy Court, Southern District of New York (Bankr. Case No. 08-14604 (MG)).

Given the automatic stay that went into effect on November 19, 2008 as a result of the bankruptcy filings, and the likelihood that the adversary proceeding action would be litigated in the Bankruptcy Court, Plaintiff filed a voluntary notice of dismissal of the District Court Civil Action without prejudice under Rule 41(a)(1)(A)(i) on November 24, 2008.

On November 20, 2008, Plaintiff essentially re-filed the case as an Adversary Proceeding in the Bankruptcy Court. (Adv. Proc. No. 08-01747 (MG)). The pleading was substantially the same as the original complaint, except that it added as a debtor defendant BHY S&B Intermediate HoldCo LLC.

---

[1] A copy of the complaint of the Official Committee of Unsecured Creditors, on behalf of Debtors, v. Bay Harbour Master LTD, *et al.*, is attached hereto as Exhibit B.
[2] Copies of the District Court Complaint and the Adversary Proceeding Complaint are attached hereto as Exhibits A and C, respectively.

Upon agreement with Defendants that the interests of efficiency and avoidance of inconsistent adjudications would be best served by litigating the case in District Court, on January 20, 2009, Plaintiff asked this Court to reinstate the case (Dist. Case No. 08-10007, Docket No. 4) and consented to the Defendants' Motion to Withdraw the Reference (Dist. Case No. 09-01029, Docket No. 1). That request was granted on February 19, 2009, when this Court accepted the reinstatement of the District Court action. On April 15, 2009, this Court granted the Motion to Withdraw the Reference (Dist. Case No. 09-01029, Docket No. 5).

On April 24, 2009, the Debtors and Non-Debtor Defendants each filed a Motion to Dismiss (Dist. Case No. 09-01029, Docket Nos. 7, 8, 9, 10).

## OVERVIEW OF THE WARN ACT

The WARN Act provides protection to employees by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and to seek retraining that will allow workers to successfully compete in the job market. WARN also provides for notice to dislocated worker units in each State so that dislocated worker assistance can be promptly provided. 20 C.F.R. § 639.1.

To accomplish its goals, the WARN Act bars employers with 100 or more employees from ordering a "plant closing" or a "mass lay-off," each as defined in the Act, unless at least sixty-days' advance written notice containing specified information is provided to each employee who will be terminated as part of, or as a reasonably foreseeable result of, a mass layoff or plant closure. 29 U.S.C. § 2101(a)(1), § 2102(a)(1).

The notice must contain:

(1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

(3) An indication whether or not bumping rights exist; and

(4) The name and telephone number of a company official to contact for further information.

20 C.F.R. § 639.7.

Failure to give the required notice renders the employer liable to each affected employee for 60 days pay and benefits. If the employer gives its employees less than 60 days notice, the employer is liable for pay and benefits for the number of days notice was wrongfully not given. 29 U.S.C. § 2104(a)(1).

Two nominally separate entities may be considered a "single employer" and be held jointly and severally liable for the failure of the employees to receive proper WARN Act notice. 29 U.S.C. §2101(a)(1) and 20 C.F.R. §639.3(a). Courts that have considered whether two entities are to be considered a single employer have sometimes used "integrated enterprise" test, a four-part analysis of the interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3rd Cir. 2001). However, the Department of Labor ("DOL"), which is responsible for issuing regulations and guidance on the WARN Act, has specifically promulgated a set of five factors to be considered when deciding whether to hold a parent company liable for the WARN Act violations of its subsidiary. The DOL regulations incorporate the integrated enterprise analysis but enumerate five relevant factors for courts to use when

considering whether to impose WARN Act liability on a parent corporation and its subsidiaries as a "single employer." The regulation provides that:

> Under existing legal rules ..., subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent of contracting company depending upon their degree of independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2).

## ARGUMENT

### I.   PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Although the Supreme Court has recently addressed the pleading standard in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Twombly* left intact the mandate that Rule 12(b)(6) must be read in conjunction with Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement showing that the pleader is entitled to relief" and contains a powerful presumption against rejecting pleadings for failure to state a claim. *Chernish v. Mass. Mut. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. February 10, 2009). As the Second Circuit has recently stated, *Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *See Iqbal v. Hasty*, 490 F.3d 143, 154 (2d Cir.2007).

Importantly, "the *Twombly* decision repeatedly indicated that the Court was not adopting or applying a "heightened pleading standard." *See Iqbal v. Hasty*, 490 F.3d at 157-258. *See also Chylinski v. Bank of Am., N.A.*, 2009 U.S. Dist. LEXIS 32133 at *3 (D. Conn. April 15, 2009),

6

*citing Twombly*, 550 U.S. at 569 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")).   The Non-Debtor Defendants mistake *Twombly* for a blunderbuss that can indiscriminately be used to shoot down any and all pleadings for lack of factual detail.   Besides extending *Twombly* to cover their two main arguments (that Plaintiffs worked "part-time" and they were not a single-employer), the Non-Debtor Defendants stretch *Twombly* to the point of absurdity by stating Plaintiffs failed to state a WARN Act claim because "Plaintiffs do not allege the facts necessary to support that there was a "plant closing," or a "mass layoff."(*See* Motion, pg. 3).   Non-Debtor Defendants can hardly feign to be lacking in notice as to the putative class' WARN claims.   When the Non-Debtor Defendants terminated the putative class, they anticipated the Complaint and gave the employees preemptive "WARN" notices disavowing WARN liability for the reasons echoed in this Motion to Dismiss, because of their purported "part-time" status.   Plaintiffs are merely taking the Non-Debtor Defendants up on their own challenge.   In filing the WARN Complaint. Plaintiff appropriately alleges that he and the putative class members were laid off or terminated from Facilities which resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as 33% of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8) (*See* Complaint, Exhibit A, ¶¶ 45- 47) and that the Plaintiff and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 210l(a)(5) (*See* Complaint, Exhibit A, ¶ 48). Plaintiffs further allege that the identity of the putative class members, *i.e.*, those individuals who would fall into the definition of "affected employee" because of the time they spent working for Defendants, their date of termination, and the site at which they worked, is contained in Defendants' books and records. (*See* Complaint, Exhibit A,

¶¶ 30-32). Those allegations are sufficient to satisfy the pleadings requirements of Rule 8 of the Fed.R.Civ.P., and the Non-Debtor Defendants point to no authority to the contrary. For Non-Debtor Defendants to maintain that Plaintiffs' mass layoff claim itself is implausible under *Twombly* fails the straight-face test. There is no proper justification for Non-Debtor Defendants' taking what are essentially its denials for the answer, and turning them into a wholesale *Twombly* attack on the Complaint.

## II.     PLAINTIFFS ARE ENTITLED TO PROTECTION UNDER THE WARN ACT BECAUSE THEY WERE EMPLOYEES OF THE BUSINESS.

The Non-Debtor Defendants purchased Steve & Barry's in an August 2008 asset sale. Non-Debtor Defendants ask this Court to find that in the six-month period following the purchase, they could side-step the WARN Act and lay off without notice the long-term employees who had continued working through the sale. The Non-Debtor Defendants derive this blanket privilege from WARN's definition of "part-time employee." No court or any source of authority has ever done so. The part-time employee test is used for taking head counts when determining whether layoffs and shutdowns meet WARN's minimum thresholds. The rule is that while part-time employees are entitled to damages when they are dismissed in a WARN event, they are not counted towards the minimum 50+ employee thresholds for mass layoffs or plant closings. Part-time employees are those "who ha[ve] been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C.S. § 2101(a)(8). It is true that this definition would preclude WARN claims in a mass layoff or shutdown in which only newly-hired employees of less-than-six-months' tenure were terminated. It has never been used to absolve liability, however, when a newly arrived *owner* of less-than-six-months' tenure takes over an ongoing workforce. The law is so clear that Non-Debtor Defendants' efforts to distort it can only be disingenuous.

8

The Non-Debtor Defendants argue that the putative class members they terminated were all part-time employees because they were let go less than six months after the purchase. (*See* Motion, pg. 9). Non-Debtor Defendants ignore the fact that the part-time definition does not exclude from the six-months tally the time employees spend working for the employing business under a previous ownership.  The WARN Act defines an employer as "any business enterprise" that employs 100 or more employees excluding part-time employees; or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime). *29 U.S.C.* § 2101(a)(1). Implicit in this definition is the idea that workers are considered employees of the business operation for the full length of their tenure, despite changes in ownership, directors, stockholders or management.

The Non-Debtor Defendants ignore the fact that after 20 years of WARN litigation, and many sale-of-business cases, no authority exists that supports their notion that when a business is sold, the incumbent employees suddenly are deemed "part-time" and remain so, bare of WARN protection, for the subsequent six months.  The Non-Debtor Defendants are disingenuous because they attempt to create this non-existent rule by mischaracterizing the cases they do cite.  For example, they correctly state that in *Roeder v. United Steelworkers of American (In re Old Electralloy Corp.)*, 162 B.R. 121 (Bankr. W.D. Pa. 1993), the purchaser had acquired the company only two months before terminating the employees.  They then elliptically state that the Court found the minimum 50-full-time employee threshold had not been met due to application of the part-time employee definition. Despite the implication Non-Debtor Defendants wish to create, however, the Court did not find any of the employees to be part-time because the buyer only had been around for two months when it ordered the layoff. To the contrary, in *Old Electralloy Corp.*, all the parties and the Court understood that when

9

calculating whether the employees had worked more than six months prior to the termination, they must include the time each employee spent working for the seller and buyer cumulatively, not just the buyer alone. This rule is so fundamental and pervasive in WARN compliance, it explains why Non-Debtor Defendants have not found a single authority for its position – or even a case in which its argument has been entertained. The Court in *Old Electralloy Corp.*, tallied the time employees worked on both the buyer's and seller's payrolls. Most of the terminated employees were not considered part-time because they had worked more than six months for the seller and buyer combined. The starting date for these employees was when they started working for the seller, not for the buyer at the date of sale. Applying this universally-accepted standard to the case at bar, the Non-Debtor Defendants' motion must fail. They have not disputed that the Plaintiff and putative class members were employed by Steve & Barry's, on either buyer's or seller's payroll, for more than six of the past 12 months. The Non-Debtor Defendants' effort to force a contrary, baseless result is unavailing.

In the absence of authority that directly considers whether a purchaser of a business is relieved of WARN obligations because of the less-that-six-month part-time employee definition, Non-Debtor Defendants look generally at how WARN assigns obligations among employers in the "sale of business" context. They make two policy arguments as to why the putative class members should be considered "new" (and, therefore, part-time) employees. First, they argue that in an asset purchase, unlike a full merger, there is no successor liability for employee WARN obligations. Next they argue that their specific agreement with the seller repudiated any successor liability for WARN obligations and intentionally created a "new" employment relationship. While there is an abundance of "sale of business" caselaw clarifying

WARN's assignment of employer obligations, the holdings of all undermine Non-Debtor

Defendants' two arguments.

The typical issue, in the sale of business context, is whether the employees suffered a

termination at the point of sale which required advance written notice by the buyer or seller.  The

WARN Act settles the question in favor of a finding of "no termination" in most cases. The Act

was amended to specifically exclude from the definition of an employment loss (which is

necessary to trigger WARN notice) interruptions in employment that occur in sales when the

employees leave the seller's payroll and join the buyer's. Such employees are owed no WARN

notice:

> (b) Exclusions from definition of employment loss:
>
> (1) In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff . . . up to and including the effective date of the sale. After the effective date of the sale . . . the purchaser shall be responsible for providing notice for any plant closing or mass layoff . . . . Notwithstanding any other provision of this chapter, any person who is a [full-time] employee of the seller . . . as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

29 U.S.C. § 2101 (a)(2), (a)(3), (a)(6), (b)(1).

Accordingly, WARN contemplates that employees who go from the buyer to the seller's

payroll in a sale of "part or all" of the business are not considered to have been terminated at all.

They have suffered no break of employment or employment loss.[3] Such continuity of

employment, for WARN purposes, certainly occurs when total ownership of the business is

purchased. According to one court:

---

[3] The DOL commentary sheds light on the sale of business exclusion by referring to Congress' intent: "th[e] sale-of-business exclusion stresses that the WARN Act does not automatically require a seller of a business to give notice to its employees that their employment will be terminated as a result of the sale. The Regulations explain that "although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss." 20 C.F.R. § 639.6.

[t]he plain language of the phrase ['sale of part or all of an employer's business'] would clearly encompass a situation where the total ownership of a business changes hands (*i.e.*, a merger, sale, or takeover of the control of company). In such a situation, the new ownership would, of course, automatically succeed to the obligations of the prior ownership, including employment contracts and agreements.

*Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.,* 898 F. Supp. 451, 456 (S.D. Tex. 1995).

The same continuity of employment and transfer of obligations occurs when only a part of the business is sold, such as its assets only, "The statute also applies to the sale of "part . . . of an employer's business."*Id. citing Headrick v. Rockwell International Corp.,* 24 F.3d 1272 (10th Cir. 1994),[4] Thus, in the sale of a business, the employees will not be deemed to have suffered an employment loss by the technical separation of employment from their previous employer. Simply stated, the rule is that no break in employment occurs for WARN purposes if the business or its parts, are sold as an operating or "going concern" that is, when employees are transferred and their employment continues uninterrupted. *Wilson v. Airtherm Prods., Inc.,* 436 F.3d 906, 910 (8th Cir. Ark. 2006). By contrast, a business is not sold as a "going concern" when it shuts down, sells its assets, and the buyer does not hire the former employees. *See Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin.,* 898 F. Supp. 451 (S.D. Tex. 1995).

In *Wilson v. Airtherm Prods., Inc.,* employees seeking WARN damages made arguments similar to those of the Non-Debtor Defendants, *i.e.,* that the asset sale constituted a termination of employment (which required notice by the seller). Rejecting this argument, as have all other

---

[4] In *Headrick v. Rockwell International Corp.,* 24 F.3d 1272, the Tenth Circuit held that an agreed transfer of responsibilities at the government's Rocky Flats project, from its then plant managing contractor of 14 years, Rockwell International, to a new contractor, was a "sale" within the meaning of WARN, and was not a "termination" of employees under the Act. The agreement transferred all responsibilities for operations at that facility, and the transferee assumed the transferor's liabilities relating to the plant's operation "with the expectation that it would operate the facility with Rockwell's [transferor's] former employees." *Id.* at 1274. It was thus a sale of "part" of an employer's business within the meaning of § 2101(b)(1).

12

Circuits in this context, the Eighth Circuit stated: "[e]ven though a seller of a business technically terminates the employment of its employees--it would be difficult to imagine a sale of a business as a going concern where the seller does not terminate the employment of its employees--the WARN Act does not focus on technical terminations." *Wilson*, 436 F.3d at 909. Accordingly, "[a]s long as the seller's employees are employed by the seller on the effective date of the sale, those employees automatically are considered to be employees of the buyer 'immediately after the effective date of the sale'" for purposes of the WARN Act. 29 U.S.C. § 2101(b)(1). *Id.* at 910. *See also*, *In Headrick v. Rockwell International Corp.*, 24 F.3d 1272, 1280 (10th Cir. 1994) (Court found no employment loss although employees had been technically terminated because they were in fact rehired by the buyer of the business just a "millisecond" after their termination and Congress meant "employment loss" to cover only employees truly idled or deprived of income); *International Alliance of Theatrical and Stage Employees v. Compact Video Services, Inc.*, 50 F.3d 1464 (9th Cir.), *cert. denied*, 516 U.S. 987 (1995)(although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss); *Wiltz v. M/G Transport Services, Inc.*, 128 F.3d 957 (6th Cir. 1997) (following *Headrick v. Rockwell International Corp.*; *International Oil, Chemical and Atomic Workers v. Uno-Ven Co.*, 170 F.3d 779 (7th Cir. 1999) (WARN Act excludes from definition of "employment loss" a situation where sale of business results only in technical termination of employment).

The lone WARN case that Non-Debtor Defendants cite in support of their position that an asset purchase creates non-continuous employment is entirely consistent with the above analysis. In *Oil, Chem. & Atomic Workers Int'l Union v. CIT Group/Capital Equipment Fin., Inc.,* the

13

Court found an asset sale constituted a full termination of employment because the employees did not pass to the buyer. The seller's business, a refinery, was foreclosed in bankruptcy. Shortly thereafter, the liquidating trustee terminated all 140 or so employees and shutdown the facility. The assets were purchased, but the buyer did not hire any of the terminated ex-employees. The ex-employees sued the buyer under WARN, even though the buyer never "exercised any employer functions with regard to Plaintiffs, such as hiring, firing, supervising, or paying them." 898 F. Supp at 453. Granting summary judgment to the buyer, the Court held that the buyer had not assumed WARN responsibilities because this was a pure asset sale where there was no transfer of any employees.

Here, by stark contrast, there is no dispute that this was a sale of business with a transfer of employees. It is indisputable that the Non-Debtor Defendants exercised a full range of employer functions over the putative class members, including their hire, supervision, pay and termination. The instant case is indistinguishable from the universe of cases that uniformly hold that a sale of business does not interrupt employment for WARN purposes. It is understandable, then, why courts applying the definition of a part-time employee consider the employee's tenure with the seller and the buyer as one towards the six-month measure. Given WARN's emphatic mandate that courts *not* deem the sale of a business in which employees transfer a termination/renewal of their employment, Non-Debtor Defendants' attempt to have this Court deem the putative class' employment both terminated and renewed with part-time status is specious. If WARN actually conferred on business buyers a six-month window in which to order mass layoffs and shutdowns free of WARN obligations, that license would be one of the most salient considerations in the law of corporate acquisitions. That it is nowhere mentioned indicates that the license does not exist and this motion is an exercise in wishful thinking.

14

Non-Debtor Defendants' second argument is that they can draft their way around WARN's presumption that employment is not interrupted by the sale of the business. They point to the terms of the Asset Purchase Agreement wherein the assets of Steve & Barry's were purchased in August 2008 (*See* Motion to Dismiss, pg. 5, 10, 11 and Exhibit 5 to Motion to Dismiss). The Non-Debtor Defendants argue that they specifically contemplated a clean rehire of the members of the putative class without any successor liability. Such attempted circumventions of WARN obligations have been specifically rejected. In *Wilson v. Airtherm Prods., Inc.* 436 F.3d at 912, the asset purchase and termination of all the employees took place on the same day, a Friday. After the sale was concluded, the buyer first began taking applications for employment on Monday. While the buyer expressed hope that all of the sellers' employees would "make application for employment," jobs were not assured. The district court found the seller had terminated the employees without notice and, on summary judgment, awarded them more than $500,000 in WARN damages. On appeal, the Eighth Circuit reversed. The panel noted that "[t]o be certain, the record paints a picture that API and ALLC may have attempted to structure the sale of API in such a way as to avoid any successor labor responsibilities for ALLC." *Id.* at 912, n.4. The Court nevertheless brushed aside such factors when considering whether a WARN event occurred at the point of sale. Vacating the award and ordering summary judgment in favor of the seller, the Court agreed with the weight of authority that the WARN sale-of-business exclusion mandates a finding of continuous, uninterrupted employment in "any transaction that transfers all or part of the employer's overall operations as a going concern. *Id.* at 910, *citing Smullin v. Mity Enters.,* 420 F.3d 836, 839 (8th Cir. Ark. 2005). Despite the fact that the employees technically had been terminated and rehired, the Eighth Circuit found they had not been terminated for WARN purposes because the business had been sold as a "going concern."

Here, Non-Debtor Defendants rest their motion on the terms of the Asset Purchase Agreement, particularly the self-serving statement that "the employment of any hired employees would begin anew on the date that BHSB hired them." (Motion pg. 5). Privately agreed-upon labels, however, do not usurp the statutory analysis. In fact, the Asset Purchase Agreement plainly reveals the parties' intent that Steve & Barry's be sold as a "going concern." The first page of the Asset Purchase Agreement states that that "Purchaser desires to purchase substantially all the assets … of the Seller *with the present intention of operating the Business as a going concern*." (*See* Exhibit 5 to Motion to Dismiss, pg. 1) (*emphasis added*). Additionally, the Employee and Employee Benefits section of the Asset Purchase Agreement reflects the notion that the parties understood the employees to be part of the business operation as a whole, as Section 9.1(a) refers to the "Business Employees," with the term "Business" defined as the "business of the sellers." (*See* Exhibit 5 to Motion to Dismiss, pgs. 3, 41). In other words, the employees are in the first instance not employees of the seller or buyer, but of the "Business." Indeed, the Agreement refers to members of the putative class as "Transferred Employees." (*See* Section 9.2 "Employee Benefits" Exhibit 5 to Non-Debtors' Motion to Dismiss, pgs. 41-42). Importantly, the buyer and seller here expressly agreed to "cooperate" to make sure the Plaintiffs' employment would be unbroken *i.e.*, to "ensure the continuity of the workforce of the Business." (*See* Exhibit 5 to Motion to Dismiss, pg. 41, "(d) Cooperation and Communications"). The parties' stated agreement to "ensure [] continuity" of their employees demonstrates their intent that employees be transferred as part of the sale. The allegations and supporting facts in this case are squarely in line with *all* of the cases described above that find no discontinuation in employment when a sale of this type occurs. The conclusion compelled by the facts and law is that, for the purposes of the WARN Act, the putative class was not terminated upon the sale of Steve & Barry's and did not begin a new

16

employment as part-time employees of the Debtors unprotected by the law; they remained

employees of the business throughout, with their WARN rights intact.

### III.   THE DEFENDANTS CONSTITUTE A "SINGLE EMPLOYER" UNDER THE WARN ACT.

The Non-Debtor Defendants also move to dismiss Plaintiffs' Complaint under Rule

12(b)(6), on the basis that Plaintiffs cannot plead facts sufficient to pierce the corporate veil in

order to hold Bay Harbour and York Capital liable for WARN violations (*See* Motion, pg. 17).

In fact, Plaintiffs do not have to pierce the corporate veil to hold Non-Debtor Defendants liable,

for their burden is lighter. This Court has specifically held that single employer allegations are

tested against the five-factor analysis set forth in the U.S. Department of Labor ("DOL")

WARN Act Regulations, and explained in *Pearson v. Component Technology,* 247 F.3d 471,

485 (3rd Cir. 2001). Unlike the traditional veil piercing analysis, the five-factor *Pearson* test

combines elements of the integrated enterprise analysis with the particularities of the WARN

Act.   Non-Debtor Defendants attempt to blur the distinction between the DOL five-factor test

and more rigorous veil piercing analyses with only a cursory recitation of the *Pearson* test.

They discuss only cases that involve veil piercing allegations (*See* Motion, pg. 14-17).

The DOL regulations, as explained in *Pearson*, require the following five factors to be

considered when determining single employer liability in a WARN context:

> (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2). *Vogt v. Greenmarine Holding, LLC,* 318 F. Supp. 2d 136, 140

(S.D.N.Y. 2004), *citing Pearson* 247 F.3d at 483-84. *See also Coppola v. Bear Stearns & Co.,*

2005 U.S. Dist. LEXIS 45551 at *16 (applying DOL test in WARN case); *Local 2-1971 of*

*PACE Intl Union v. Cooper,* 364 F. Supp. 2d 546 (W.D.N.C. 2005) (citing *Vogt* and *Pearson* in

applying DOL test to WARN case); *Franklin v. General Trucking, LLC*, 2008 U.S. Dist. LEXIS

38431 (W.D. Ark. 2008) (applying DOL test in WARN case); *Geelan v. Mark Travel, Inc.*, 2006

U.S. Dist. LEXIS 89863 (D.Minn. 2006) (applying DOL test in WARN case).

     The DOL test is not an exhaustive list, and, therefore, the court may look beyond the

five-factor test in determining whether the entities are single employers. *See Ferrell v. Harvard

Ind., Inc.,* 2001 U.S. Dist. LEXIS 17358 at *22 (E.D. Pa. 2001) (noting "the approach is holistic,

looking to 'all the circumstances of the case' as opposed to any single, dispositive factor") (citing

*Pearson*, 247 F.3d at 486, 490-491).

     Most significantly, it is not necessary that all five factors be present in order to find

liability. *Pearson* 247 F.3d at 504 (noting that if the de facto exercise of control factor is

particularly striking, "then liability may be warranted even in the absence of the other factors.")

     In *Vogt*, this Court specifically held that the DOL's five factor test is the appropriate test

for determining single-employer liability under WARN. *Vogt v. Greenmarine Holding, LLC*,

318 F. Supp. 2d  at 140 ("this Court focuses on the DOL test because the WARN regulations

specifically define it as the test to be used in such a circumstance, and because the five-factor

DOL test encompasses the four-factor federal labor law integrated enterprise test"). The *Vogt*

Court explained that tests for veil piercing, which are generally based on state corporate law, are

"particularly inappropriate" in a WARN context because such tests may vary from state to state

when federal law provide no specific rule of liability. *Vogt*, 131 F. Supp. 2d at 141. The *Vogt*

Court reasoned that veil piercing tests are also not controlling where federal law provides a

specifically-applicable liability rule, as the DOL has done here. In following the example of

other Circuits that have adopted the DOL test, the *Vogt* Court agreed that "the DOL factors are

the best method for determining WARN Act liability because they were created with WARN Act

policies in mind." *Id., citing Pearson*, 247 F.3d at 490. *See also Childress v. Darby Lumber, Inc.,*
357 F.3d 1000 (9th Cir. 2004) (same); *Administaff Cos. v. UNITE*, 337 F.3d 454, 458 (5th Cir.
2003) (same). For this reason, Non-Debtor Defendants' citations to veil piercing cases must be
disregarded as irrelevant here.

Improvidently, Non-Debtor Defendants seek dismissal of the Complaint because its
factual allegations do not meet their notion of what the exacting standards are under an
inapplicable standard – that of veil-piercing causes of action. Having misconstrued the
Complaint, the Non-Debtor Defendants' motion at best merely raises questions of disputed fact
relevant to whether Plaintiffs will ultimately prevail under something approaching the five-factor
single employer test: "BHSB was not part of any integrated enterprise with Bay Harbour or
York Capital." (*See* Motion, pg. 17).

Non-Debtor Defendants rest their motion on their contention that Plaintiffs "ha[ve] set
forth ***no facts*** in support" of their single employer allegation. *See* Motion, pg. 14 (dual emphasis
in original). Plaintiffs' Complaint alleges each of the DOL's five factors for single employer
liability against the Non-Debtor Defendants, including the allegation that Defendants made the
decision to terminate the employees and to order a mass layoff/plant closing. (*See* Exhibit A,
Complaint ¶¶ 19, 21, 45). In fact, consistent with the DOL test, Plaintiffs have alleged the
following facts in support of single employer liability:

- BHSB is a wholly owned entity of Bay Harbour and York Capital (*See* Complaint, ¶ 13).

- BHSB's principal, Doug Teitelbaum, oversaw and directed the operations of BH S&B. (*See* Complaint, ¶ 14).

- Principals of York Capital oversaw the purchase and operations of BHSB. (*See* Complaint, ¶ 15).

19

- Defendants, as a single employer, owned and operated the Port Washington Facility where Plaintiff was employed, a shipping center at 4545 Fisher Road, Columbus, Ohio, and other facilities. (*See* Complaint, ¶ 17).

- The Defendants made the decision to terminate the employees. (*See* Complaint, ¶ 19, 21, 45).

Accordingly, as pled in Plaintiffs' Complaint, there are enough specific facts alleged to support the contention that the Defendants together constituted a "single employer" under the WARN Act. Non-Debtor Defendants cannot realistically contend Plaintiffs are taking up the time of this Court with a "largely groundless claim" just for "an interrorem increment of the settlement value." *See* Motion, pg. 6. Plaintiffs' ongoing investigation continues to reveal facts that support their allegations that Non-Debtor Defendants were a single employer with the Debtor Defendants. These allegations are bolstered by similar allegations raised by the Debtors themselves. They, in conjunction with the Creditor's Committee, have brought their own Complaint seeking to pierce the corporate veil in order to hold the Non-Debtor Defendants liable for the failure of Steve & Barry's. (*See* Debtors' Complaint, attached as Exhibit B). Their complaint alleges facts under the more rigorous standard and buttresses the facts Plaintiffs have alleged so far. As noted above, the analysis for piercing the corporate veil is more demanding than for determining single employer status under the *Pearson* five-factor test. Debtors, who claim they were the alter ego of the Non-Debtor Defendants, and dominated and controlled by the Non-Debtor Defendants, have access to far more facts showing the proximity of these entities. The facts alleged in their complaint supporting the piercing of the corporate veil may well support many, if not all, of the *Pearson* factors. Non-Debtor Defendants cannot suggest that

the allegations in Plaintiffs' Complaint are implausible or are insufficient to put them on notice in light of the amplified complaint of Debtors.[5]

In all, Plaintiffs have satisfied the pleading requirements for Defendants to understand the basis of their WARN claim and to satisfy the standards of Rule 12(b)(6). The Complaint cannot

---

[5] For example, Debtors allege the following facts that, if proven true, would each satisfy at least one of the Pearson factors:

- BH S&B Holdings LLC is owned by BHY S&B Intermediate Holdco LLC (See Debtor's Complaint, ¶ 1);
- [Douglas] Teitelbaum formed the Debtor, BH S&B Holdings, LLC, on behalf of the [Bay Harbor] Defendants, which are all affiliated and acted in concert at all material times, for the purpose of entering into the Asset Purchase Agreement, liquidating a portion of Steve and Barry's retail stores, and continuing to operate the remaining stores and related business as a going concern (See Debtor's Complaint, ¶ 28);.
- Holdco was in turn formed by Bay Harbour to serve as a holding company for the Debtor, and was its sole managing Member (See Debtor's Complaint, ¶ 29);.
- The governing structure of Holdco, which controlled the Debtor, consisted of a seven-member Board of Managers, consisting of two representatives of Bay Harbour, two representatives of York, one representative of Hilco, Jeffrey Hecktman, and Defendants Prevor and Shore. (See Debtor's Complaint, ¶ 36);
- Although the Debtor continued to have cash on hand after some financial restructuring by its new owners, Bay Harbour and York never permitted the Debtor to order new merchandise for the Spring 2009 season, which was critical to its ability to survive (See Debtor's Complaint, ¶ 51);
- By early November 2008, as a direct consequence of the failure of the Debtor's management to procure new merchandise for going-forward stores, its failure to accomplish the timely and effective transfer of inventory between going-forward and liquidating stores, its failure to accomplish the timely and effective transfer of merchandise from the Debtor's distribution center to individual stores, the sweep of cash by Abelco based upon inventory valuation, and the lack of sufficient capital available to the Debtor to overcome these circumstances, Bay Harbour and York concluded that the Debtor required additional capital to continue as a going concern, yet elected not to procur the additional capital. (See Debtor's Complaint, ¶¶ 52,53);
- From the beginning, the Bay Harbour Board Members and the York Board Members dominated and controlled the Debtor for the benefit of Bay Harbour and York as if the Debtor was merely an instrumentality of Bay Harbour and York. No Board meetings were ever held. Rather, Holdco and the Debtor were managed by "consensus" of the Bay Harbour and York representatives, without consultation of the other Board Members. (See Debtor's Complaint, ¶¶ 56-57);
- The Debtor had no official Chief Executive Officer or Chief Financial Officer, as Bay Harbor acted as its CEO. (See Debtor's Complaint, ¶ 58, 60);
- The Bay Harbour Board Members, with the consent of the York Members, made all strategic decisions of the Debtor, and, through JH Cohn, exercised strict control over the expenditure of funds by Debtor's management. (See Debtor's Complaint, ¶ 61);
- From the beginning, Bay Harbour and York had a secret back-up plan to liquidate the Debtor starting in December 2008 if sales did not go well in September, October and November, 2008. (See Debtor's Complaint, ¶ 63); and
- The Debtor's management were not advised of Bay Harbour and York's secret plan to liquidate the Debtor starting in December 2008 if sales did not go well in September, October and November, 2008. (See Debtor's Complaint, ¶ 66).

be dismissed on this ground and discovery of the single employer issue should be allowed to proceed.

## CONCLUSION

Plaintiffs' Complaint states a claim for which relief may be granted and therefore the Motion to Dismiss should be denied in its entirety.

Dated:   May 22, 2009                    Respectfully submitted,


                                          /s/ René S. Roupinian
                                         René S. Roupinian (RR 3884)
                                         Jack A. Raisner (JR 6171)
                                         OUTTEN & GOLDEN LLP
                                         3 Park Avenue, 29th Floor
                                         New York, New York 10016
                                         Telephone: (212) 245-1000
                                         Email: rroupinian@outtengolden.com
                                         Email: jar@outtengolden.com

                                         *Attorneys for Plaintiff and the putative Class*

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL GUIPPONE, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BH S&B HOLDINGS LLC, BHY S&B INTERMEDIATE HOLDCO LLC, BAY HARBOUR MANAGEMENT LC, and YORK CAPITAL MANAGEMENT, <br><br> Defendants. | Case No. 09 Civ. 01029 (CM) |

## CERTIFICATE OF SERVICE

Kim Xhaferi, declares under penalty of perjury that: I am not a party to this action, am

over 18 years of age and am employed by Outten & Golden LLP, 3 Park Avenue, 29th Floor,

New York, NY 10016.  I hereby certify that true and correct copies of the foregoing were served

on May 22, 2009 via first class mail upon the following:

Richard I. Greenberg (RG 4911)
JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
*Special Counsel for the Debtors*

Richard Stieglitz, Jr.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
*Attorneys for the Debtors*

Israel Dahan (ID 6148)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281

*Attorneys for Bay Harbour Management LC*

Richard Swanson (RS 6068)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
*Attorneys for York Capital*

KIM XHAFERI